The Knight-Cambell Music Company v. Commissioner.
Knight-Cambell Music Co. v. Commissioner
Docket No. 5585.
United States Tax Court
1945 Tax Ct. Memo LEXIS 238; 4 T.C.M. (CCH) 376; T.C.M. (RIA) 45121; April 12, 1945
*238 Morrison Shafroth, Esq., 730 Equitable Bldg., Denver 2, Colo., for the petitioner. Gene W. Reardon, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined a deficiency of $3,087.08 in the petitioner's income tax for 1942. The only matter in controversy is the correctness of the respondent's action in disallowing a deduction of $10,000, taken by petitioner as legal expenses. Findings of Fact The proceeding was submitted upon a stipulation of facts and certain documentary and oral evidence. The facts stipulated are found as stipulated. The petitioner and its subsidiaries, The Demco Investment & Trading Company, The Midwestern Distributors, Inc., and The Denver Music Company, are Colorado corporations. The petitioner's return for 1942 was filed with the Collector for the District of Colorado. At all times material hereto, the outstanding common stock of petitioner was owned as follows: Shares
Lillian E. Campbell
1,315 3/6
Clarence G. Campbell
464 5/6
Bertha Campbell
335 5/6
Marjorie Campbell Bryant
333 2/6
Cheney R. Baker
154
W. W. Bradford
37 3/6
Wilbur Denious (Director's shares)
3
Total
2,644
*239 Clarence G. and Bertha Campbell and Marjorie Campbell Bryant are children of Lillian E. Campbell. Cheney R. Baker was the divorced husband of Bertha Campbell. In 1920 Lillian E., Clarence G. and Bertha Campbell, Cheney R. Baker and W. W. Bradford owned a substantial majority of the petitioner's outstanding stock and were in control. Desiring to expand the business and to obtain additional capital, they caused the petitioner's articles of incorporation to be amended so as to provide for 5,000 shares of 7 percent cumulative preferred stock and 5,000 shares of common stock, with the shares of each class of stock having a par value of $100. Immediately following such amendment and in the same year, 4,100 of the authorized shares of the preferred stock were sold upon the representation of Clarence G. Campbell and petitioner to the effect that it offered a desirable investment, safeguarded by the provisions of Article III of the amended articles of incorporation. The preferred stock was held almost entirely by individuals who were not related to the Campbell family. Article III of petitioner's amended articles of incorporation prohibited the issuance of its preferred stock, unless *240 such stock be sold for cash and the proceeds be used in petitioner's business. The article also prohibited the mortgaging of real estate owned by petitioner without the consent of the holders of at least 75 percent of the outstanding preferred stock, and contained other prohibitions respecting borrowings and the pledging of corporate assets as security therefor. The article contained further provisions obligating petitioner to create and maintain a fund for the annual redemption and retirement of its preferred stock by setting aside and paying into such fund certain annual payments. From January 1, 1926, to January 3, 1933, Lillian E. and Clarence G. Campbell, Cheney R. Baker and W. W. Bradford were directors of petitioner, and at all times constituted a majority of its board of directors. From 1928 down to January 3, 1933, Bertha Campbell also was a director. On January 3, 1933, Albert Glesecke, C. E. Wallick, Starling W. Price, A. E. Liverman and Carl Rubin, owners of a majority of the shares of the petitioner's outstanding preferred stock, and sometimes hereafter referred to as the preferred stockholders, filed a complaint in the District Court for the City and County of Denver, *241 State of Colorado, against petitioner, Lillian E., Clarence G. and Bertha Campbell, Cheney R. Baker and W. W. Bradford. The defendants owned a majority of the outstanding common stock in petitioner and, in addition to being directors of petitioner, were also its officers. The complaint alleged that the individual defendants, acting as the board of directors of petitioner, committed various ultra vires and fraudulent acts in willful violation of the rights of petitioner and its preferred stockholders, the principal acts so alleged being the payment of dividends to the common stockholders and the mortgaging of certain corporate property in violation of the provisions of the articles of incorporation under which the preferred stock was issued, and the payment of excessive salaries to the officers of the company. The complaint further alleged that through their illegal acts said individual defendants profited to the injury and damage of the petitioner and its preferred stockholders. The complaint prayed for an accounting between the individual defendants and petitioner, that judgment be entered against the individual defendants in favor of petitioner for amounts found to be due from *242 them severally to petitioner on account of said ultra vires and fraudulent acts, and for the appointment of a receiver for the petitioner. The Demco Investment & Trading Company, a Colorado corporation, wholly owned by petitioner and having officers and directors who were also officers and directors of petitioner, was made a party defendant to the action on December 4, 1933. The plaintiffs were represented by attorneys Pershing, Nye, Bosworth & Dick, and the defendants were represented by attorneys Dines, Dines & Holme, Wilbur F. Denious and Hudson Moore. After a trial on the merits and after hearing arguments of the respective counsel, the District Court entered an order holding for the plaintiffs and against the defendants, and on January 3, 1934, entered its formal findings of fact, conclusions of law and decree. The court found as facts that at various times during the period 1926 through 1931, the individual defendants, acting as directors of petitioner, and with intent to evade and scrap petitioner's obligation to create a fund for the retirement of its legally issued and outstanding preferred stock and to cheat and defraud the holders thereof, caused the petitioner, to commit *243 and carry out numerous fraudulent, illegal and ultra vires or phony transactions whereby large sums of petitioner's funds were illegally paid to them as bonuses, dividends on common stock, expense items, personal advancements and in redemption of common stock, and that such illegal disbursements prevented payment of corporate funds into the retirement fund for the retirement of the outstanding preferred stock. The court also found as facts that the individual defendants caused petitioner to commit numerous other illegal and ultra vires accts by borrowing large sums of money and pledging security therefor; by practicing and permitting frauds to be practiced on petitioner while pretending to act in a fiduciary capacity as its directors and officers, by which acts they personally profited at the expense of petitioner; and by willfully and intentionally ignoring and evading the provision in petitioner's articles of incorporation for the retirement of its preferred stock, whenever such provisions interfered in any way with their own interests or desires. The court further found that the individual defendants had so managed the petitioner's affairs as to consume a surplus of approximately *244 one half million dollars, which existed in 1926, thus causing impairment of its capital and placing it in an insolvent condition or in imminent danger of insolvency, and that they were currently continuing to operate it at a loss. Among other things, the court concluded that by reason of the wrongful and fraudulent acts of the individual defendants who had been in complete control of petitioner, their utter disregard for the rights of preferred stockholders and their absorption of petitioner's assets for their own enrichment, there could be no hope that said condition would discontinue or that the rights of the preferred stockholders could be protected in any other manner than by taking the management of petitioner out of the hands of those then in control. It further concluded that to prevent loss in operation, to preserve and to conserve the assets of the petitioner, and to administer and, if necessary, to wind up its affairs, collect the judgments hereafter mentioned and discharge its indebtedness to creditors and its obligations to its preferred stockholders, it was necessary that a receiver be appointed, with the usual and customary powers, to take charge of all the assets of *245 the petitioner and to administer, account for and distribute them under the orders of the court. Further, the court ordered, adjudged and decreed (1) personal judgments totaling $80,458, with interest, in favor of the petitioner against the individual defendants, jointly and severally; (2) personal judgments in favor of petitioner on account of illegal bonuses and expenses and against Clarence G. Campbell, for $6,300, with interest, and against Cheney R. Baker and W. W. Bradford for $4,800 and $3,500, respectively, with interest; (3) personal judgments in favor of petitioner on account of illegal withdrawals and against Clarence G. Campbell for $27,866.80, with interest, against Cheney R. Baker for $11,580, with interest, and against Bertha Campbell for $24,286.60, with interest; (4) the cancellation of credits set up on account of an illegal dividend on common stock in favor of Lillian E. Campbell for $40,980, and in favor of W. W. Bradford for $1,200; (5) that a pretended sale in 1927 of 900 shares of preferred stock in petitioner to Demco Investment & Trading Company be set aside, and that that company repay to petitioner $11,462.50 which had been illegally paid as dividends on *246 such stock; (6) that 100 shares of the preferred stock which had been illegally issued to Demco Investment & Trading Company, and then in the possession of Lillian E. Campbell, be surrendered; (7) that the purchase by petitioner of 140 shares of its common stock from W. W. Bradford in 1930, and of 622 shares of its common stock from Lillian E. Campbell in 1931 be cancelled, and that the purchase price thereof credited to them on the books of petitioner be re-established as an indebtedness of said parties in the amounts of $24,602.20 and $61,623, respectively; and (8) that the individual defendants forthwith turn over all of the property of petitioner to the receiver of the court hereafter mentioned, and that said parties be enjoined from interfering with the receiver or with his possession, control and operation of the assets of petitioner. The court appointed Albert Giesecke and Edward F. Bishop as co-receivers, to take charge of the property and assets of petitioner and, until further order of the court, to conserve, administer and handle the assets and business of the petitioner under the orders and directions of the court, to collect the income of the petitioner, the indebtedness *247 owing to it and any other assets, and to pay petitioner's indebtedness, to collect the judgments rendered against the individual defendants and to control the petitioner and its business until such time as the rights and claims of creditors and preferred stockholders then unpaid should be paid in full or otherwise discharged in a manner approved by the court, and "if necessary and expedient for the best interests of all concerned, including creditors and preferred and common stockholders, to wind up, liquidate and close the corporate affairs of" the petitioner. The court retained jurisdiction over the receivers and the receivership estate in their hands for such proceedings and orders supplementary to the decree as might, upon proper showing, be found necessary or expedient. The court allowed $5,000 to the attorneys for the plaintiffs as compensation for their services, and directed payment out of the receivership estate. The claim for a fee for legal services by the two law firms representing the defendants was disallowed. During the months of January and February 1934, they withdrew as counsel. The firm of Quiat, Ginsberg & Creamer was employed to appeal the case, and in January *248 1934, an appeal was docketed in the Supreme Court of Colorado. Pursuant to the decree of the District Court, and its subsequent order of March 19, 1934, Albert Glesecke and Edward F. Bishop, as receivers, conducted the business of petitioner as a going concern. On September 7, 1934, they reported to the court in part as follows: "* * * it now appears that the business cannot be disposed of as a going concern and to continue further to operate it in the manner in which it has been conducted will result in further operating losses and prevent your Receivers from making payment of the claims of the preferred stockholders in accordance with the decree and order of the Court. * * * * *
"* * * it is necessary that they proceed with the liquidation of the business of The Knight-Campbell Music Company in accordance with the directions contained in the decree of March 14, 1934." On September 8, 1934, the receivers served notice that they would apply on September 11, 1934, for an order directing them to proceed with the liquidation of petitioner. The hearing on their application was postponed. Lillian E. and Clarence G. Campbell personally retained, under a written employment *249 contract and on a contingent fee basis, attorneys Grant, Ellis, Shafroth and Toll and Victor A. Miller. The attorneys were employed to obtain a termination of the receivership and the discharge of the receivers; the elimination of the preferred stockholders from the picture; a restoration of the management and control of petitioner to the holders of the common stock; and to conserve the investment of the holders of that class of stock. To such end, the attorneys filed in the District Court, in the name of Lillian E., Clarence G. and Bertha Campbell, Cheney R. Baker and W. W. Bradford, a "Petition for Discharge of Receivers and Other Relief". In that petition, objection was made to the receivers' proposal to liquidate petitioner, and the receivers were charged with being actuated by personal malice and with attempting to destroy the common stock interest in the business. It was alleged that on September 27, 1934, the common stockholders offered to the preferred stockholders a plan for the retirement of the preferred stock at par plus accrued dividends, as promptly as possible, and that the plan was rejected by the preferred stockholders. Request was made for the discharge of the receivers, *250 for judgment against the receivers for malfeasance and negligence, and for a return of the management of petitioner to a board of directors chosen by the owners of the common stock. Another petition, which was identical with the foregoing and asking for the same general relief, together with a petition to intervene, was filed by the attorneys in the name of the remaining common stockholder, Marjorie Campbell Bryant, who was not a party defendant in the proceeding before the District Court. A hearing was had on the petition of the receivers for an order directing them to proceed with the liquidation of the petitioner and on the petitions of the individual defendants and Marjorie Campbell Bryant. During the course of the hearing, a settlement providing for the continuance of petitioner's business as a going concern and for the retirement in full of the preferred stock was reached. A stipulation of settlement was entered into, and on May 8, 1935, was filed with and approved by the District Court. Pursuant to this agreement the outstanding preferred stock was retired by a payment of $97,960 in cash and secured notes in the amount of $48,092.03. The cost of the receivership, including *251 fees of the attorneys for the receivers, was paid by the receivers out of funds of the receivership estate. On May 20, 1935, the receivers were discharged, and the petitioner and its business were turned over to the common stockholders. On May 8, 1935, the date the District Court approved the stipulation of settlement, the petitioner transferred and assigned to Clarence G. Campbell, all judgments in its favor which had been obtained against Lillian E., Clarence G. and Bertha Campbell, Cheney R. Baker and W. W. Bradford as a result of the action brought by the preferred stockholders. Thereupon the said judgments were cancelled, and upon the discharge of the receivers the individual defendants dropped their appeal which had been filed with the Supreme Court of Colorado in January of 1934, and in which they were represented by the firm of Quiat, Ginsberg & Creamer. In order to obtain sufficient cash to retire the preferred stock pursuant to the stipulation of settlement, it was necessary for the petitioner to borrow $35,000. This was obtained from the First National Bank of Denver. The bank required that two thirds of the common stock be turned over to it, with voting power. This *252 was done and such power continued in the bank through 1942, despite efforts of the common stockholders to obtain permission to select the directors and officers. The fee charged by the attorneys Grant, Ellis, Shafroth and Toll and Victor A. Miller, who had been employed by Lillian E. and Clarence G. Campbell about September 1934, was $10,000. The bank refused to make the loan if the petitioner assumed liability for payment of the fee or entered it on its books as an account payable. On June 13, 1935, Lillian E. and Clarence G. Campbell paid the $10,000 fee to Grant, Ellis, Shafroth and Toll and Victor A. Miller. Common stockholders, owning approximately 90 percent of the common stock, agreed that as soon as the bank loan was paid, or earlier, should the bank consent, but under no other conditions, the petitioner would reimburse Lillian E. and Clarence G. Campbell for such payment. Prior to 1942, the bank was unwilling to consent to the petitioner's assumption of liability for the payment, or of its payment, of the amount. However, on December 22, 1942, following a request made to it, and after a review of the petitioner's financial condition, the bank consented to petitioner's either *253 paying or obligating itself to pay such amount. Thereupon, on the same day, the board of directors of petitioner adopted a resolution by which petitioner assumed liability for payment of the amount, and the payment thereof was authorized. Accordingly, in 1942, the petitioner made cash payments of $2,500 and $1,575 to Clarence G. and Lillian E. Campbell, respectively, and executed to the latter a note for $5,925, payable at the rate of $175 per month, without interest. During 1942 and in all other years, the books of the petitioner were kept on an accrual basis. In its income tax return for 1942, the petitioner deducted the $10,000 as legal fees. The amount had not been deducted or allowed in 1935, or in any other year. In determining the deficiency involved, the respondent determined that the amount did not constitute an ordinary and necessary business expense, and disallowed the deduction. The attorneys Grant, Ellis, Shafroth and Toll and Victor A. Miller were not employed in, and did not participate in, the appellate proceeding taken by the individual defendants to the Supreme Court of Colorado. They handled only the receivership phase of the case that was before the District *254 Court in September 1934, and afterwards, until the discharge of the receivers in May 1935. In addition, they passed on certain matters involved in obtaining the bank loan of $35,000. Their fee of $10,000 was reasonable for the services rendered. A forced liquidation of the petitioner as proposed by the receivers probably would have resulted in the termination of its business as a going concern and in a total loss to the common stockholders. The petitioner is now operating at a considerable profit, and has net assets in excess of $200,000. The services for which the above fee of $10,000 was paid were rendered primarily for the benefit of the common stockholders, by two of whom the attorneys were employed and paid. Opinion Counsel for petitioner contends that the receivers were guilty of mismanagement, and wrongfully proposed its liquidation; that Grant, Ellis, Shafroth and Toll and Victor A. Miller "were employed solely to resist the wrongdoing of the receivers" and thereby to preserve petitioner from destruction; that petitioner in 1942 properly assumed liability for the $10,000 fee which had been paid to the said attorneys in 1935 by common stockholders Lillian E. and Clarence *255 G. Campbell, and that petitioner thereby became entitled to deduct for 1942 the amount of said payment as an ordinary and necessary expense incurred in carrying on its business. The respondent's position is that the fee was paid to the attorneys for effecting settlement of a controversy between the two classes of petitioner's stockholders whereby the common stockholders regained control of petitioner, preserved their investment in its common stock, and obtained the cancellation of substantial money judgments awarded to petitioner against all of them, except one who was not a director, and that his disallowance of the deduction taken should be sustained. Prior to the receivership the common stockholders, with the exception of one, had constituted petitioner's board of directors. Having found that they were guilty of numerous illegal and fraudulent acts, the court ousted them from control of petitioner and placed it in the hands of receivers, for the purpose of discharging the claims of the preferred stockholders, with an authorization to wind up and liquidate the petitioner's affairs, if necessary, for the best interest of the creditors and both preferred and common stockholders. *256 The record fails to establish that the receivers were guilty of mismanagement or that any wrongful acts on their part put the petitioner in danger of liquidation or destruction. The receivers acted under orders of the court and the presumption is that they acted properly. Furthermore, we may not assume that the court would have permitted or ordered a wrongful liquidation of the petitioner. The petitioner was saved, not by the prevention of its destruction through the mismanagement or wrongful acts of the receivers, but by settlement of dispute between the preferred and common stockholders, a settlement which on the one hand satisfied the claims of the preferred stockholders and on the other restored the common stockholders to control of petitioner. It is our conclusion on the evidence that the attorneys, whose fee is here in controversy, were employed primarily for the purpose of restoring control of petitioner to the common stockholders, obtaining a cancellation of the personal judgments entered against the common stockholder-directors in favor of petitioner, and preserving, if possible, the investments of the common stockholders. Such matters as the elimination of the preferred *257 stockholders through the retirement of their stock, the discharge of the receivers, and the prevention of the liquidation of petitioner, were the means of effecting the desired objectives. The attorneys rendered the services for which they were employed and were paid their fee by their employers, namely, two of the common stockholders. The agreement of the petitioner to reimburse the said stockholders for the fee so paid does not transform it into an ordinary and necessary expense of petitioner. Expenditures made by a corporation for the benefit of its stockholders, even though the corporation may be incidentally benefited thereby, do not constitute ordinary and necessary expenses of the corporation in carrying on its business. ; ; and , affirmed on this point, (March 23, 1945). The respondent's determination is sustained. Decision will be entered for the respondent.